**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
 UNITED STATES OF AMERICA,      :
      :
      - v. -      :
      :
      :
 ERIC LIRA.,      :      No. 22-Cr-151 (LGS)
      :
      :
      Defendant.      :
      :
      :
      :
      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT</u>

<u>/s/ Mary Stillinger</u>
STILLINGER & GODINEZ, PLLC
401 Boston Avenue
El Paso, Texas 79902
915-775-0705
*Attorney for Defendant Eric Lira*

**Introduction**

The Rodchenkov Anti-Doping Act (also referred to by its acronym "RADA"), 21 U.S.C. § 2401-2404 was passed to give criminal prosecution authority to the United States, to pursue violations of international rules regarding performance enhancing drugs (PEDs). In a nutshell, it criminalizes the rules enacted and imposed by an international organization that governs international sporting events.

This Court should dismiss Count One of the indictment, because it should find that RADA is unconstitutional for several reasons: (1) it violates the anti-delegation clause of the United States Constitution; (2) it is unconstitutionally void for vagueness; and (3) it so overbroad that it punishes protected speech.

To counsel's knowledge, this case presents the first prosecution under this statute, which was just signed into law on December 4, 2020.[1] Counsel therefore knows of no cases that interpret the statute or address the constitutional defects in it. This is apparently a case of first impression.

**Legal Background**

Count One charges a violation of RADA, tracking the statutory language precisely (only changing the disjunctive to a conjunctive). The statute provides:

> It shall be unlawful for any person, other than an athlete, to knowingly carry into effect, attempt to carry into effect, or conspire with any other person to carry into effect a scheme in commerce to influence by use of a prohibited substance or prohibited method any major international sports competition.

21 U.S.C. § 2402(a).

---

[1] The conspiracy charged in Count One is alleged to have begun prior to the enactment of the statute.

This statute does not have meaning without an explanation of the terms it employs.  The relevant

definitions are not set out in 21 U.S.C. § 2401, but the statute gives direction where to find them:

> (2) Athlete - The term "athlete" has the meaning given the term in Article 2 of the Convention.
>
> (3) Code - The term "Code" means the World Anti-Doping Code most recently adopted by WADA on March 5, 2003.
>
> (4) Convention - The term "Convention" means the United Nations Educational, Scientific, and Cultural Organization International Convention Against Doping in Sport done at Paris October 19, 2005, and ratified by the United States in 2008.
>
> (5) Major international sports competition -
>> (A) means a competition--
>>> (i) in which one or more United States athletes and three or more athletes from other countries participate;
>>> (ii) that is governed by the anti-doping rules and principles of the Code; and
>>> (iii) in which–
>>>> (I) the competition organizer or sanctioning body receives sponsorship or other financial support from an organization doing business in the United States; or
>>>> (II) the competition organizer or sanctioning body receives compensation for the right to broadcast the competition in the United States; and
>>
>> (B) includes a competition that is a single event or a competition that consists of a series of events held at different times which, when combined, qualify an athlete or team for an award or other recognition.
>
> (6) Person - The term "person" means any individual, partnership, corporation, association, or other entity.
>
> (7) Prohibited method - The term "prohibited method" has the meaning given the term in Article 2 of the Convention.
>
> (8) Prohibited substance - The term "prohibited substance" has the meaning given the term in Article 2 of the Convention.
>
> (9) Scheme in commerce - The term "scheme in commerce" means any scheme effectuated in whole or in part through the use in interstate or foreign commerce of any facility for transportation or communication.

21 U.S.C. § 2401.

To find the definitions in Article 2 of the Convention, one must look up the website for the United Nations Educational, Scientific, and Cultural Organization International Convention Against Doping in Sport ("Convention").  International Convention against Doping in Sport, UNESCO, https://en.unesco.org/themes/sport-and-anti-doping/convention (last visited September 6, 2022).  The next step is to pull up the full text of the Convention and navigate to Article 2 to find the relevant definitions. International Convention against Doping in Sport: Programme and Meeting Document, UNESCO, https://unesdoc.unesco.org/ark:/48223/pf0000142594 (last visited September 6, 2022).  These are the pertinent definitions found in Article 2 of the Convention:

> "Athlete" means, for the purposes of doping control, any person who participates in sport at the international or national level as defined by each national anti-doping organization and accepted by States Parties and any additional person who participates in a sport or event at a lower level accepted by States Parties. For the purposes of education and training programmes, "athlete" means any person who participates in sport under the authority of a sports organization.

> "Prohibited method" means any method so described on the Prohibited List, which appears in Annex I to this Convention.

> "Prohibited substance" means any substance so described on the Prohibited List, which appears in Annex I to this Convention.

The next step in determining the definitions of "prohibited method" and "prohibited substance" takes the reader to Annex I of the Convention.  Annexes: Prohibited List / Standards for Granting Therapeutic Use Exemptions, UNESCO, https://en.unesco.org/themes/sport-and-anti-doping/convention/annexes (last visited September 6, 2022).   Annex I of the Convention consists of the Prohibited List as determined by the World Anti-Doping Agency. Id. Annex I is updated each year. Id.  According to the Convention's website, there is a mechanism in the Convention, as outlined in Article 34, which allows signatory governments (States Parties) to

approve and adopt any changes made to the Prohibited List by WADA. *Id.*  However, unless

two-thirds of the States Parties object, the proposed amendments are incorporated into the

Convention. *Id.*

**Argument**

**I.  The Rodchenkov Anti-Doping Act violates the nondelegation doctrine under Article I, section 1, of the United States Constitution.**

Article I, section 1, of the United States Constitution provides that "All legislative

Powers herein granted shall be vested in a Congress of the United States."  The Supreme Court

has held that "[a]ccompanying that assignment of power to Congress is a bar on its further

delegation."  *Gundy v. United States,* __ U.S. __, 139 S.Ct. 2116, 2123 (2019).

Delegation of legislative authority to agencies has been challenged in many

contexts.  Courts have generally held that federal agencies do not wield legislative power when

they make rules to support legislation.  *See, e.g., INS v. Chadha,* 462 U.S. 919, 953 n. 16, 103

S.Ct. 2764 (1983) (explaining that rulemaking may resemble lawmaking, but it is not).

Delegation to a private entity is substantially different.  Delegation to a private group was

described as "legislative delegation in its most obnoxious form" when Congress passed the

Bituminous Coal Conservation Act that delegated regulatory authority to coal producers.  *Carter*

*v. Carter Coal Company,* 298 U.S. 238, 311, 56 S.Ct. 855 (1936).

In some cases, delegation to a private entity has been upheld as permissible, where a

governmental agency retains oversight.  For instance, the Fifth Circuit recently noted that it was

permissible for a private self-regulatory organization to propose rules and adjudicate disciplinary

proceedings where the SEC "retain[s] power to approve or disapprove rules and to review

disciplinary actions."  *Texas v. Rettig,* 987 F.3d 518, 532 n.12 (5th Cir. 2021), *cert. denied*, 142

S.Ct. 1308 (2022) (quoting *R.H. Johnson & Co. v. SEC,* 198 F.2d 690, 695 (2d Cir. 1952)).

The ability to delegate is strictly tied to the oversight of the governmental entity.  As the Fifth Circuit found in *Texas v. Rettig,* "an agency may subdelegate to private entities so long as the entities 'function subordinately to' the federal agency and the federal agency 'has authority and surveillance over [their] activities.'"  *Id.*, 987 F.3d at 532 (quoting *Sunshine, Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 399. 60 S.Ct. 907 (1940)).

In this case, the legislative delegation from Congress is to a unique type of entity.  Congress has delegated the definitions, and thereby the description of the illegal conduct, to the "Convention" which is the United Nations Educational, Scientific, and Cultural Organization International Convention Against Doping in Sport done at Paris October 19, 2005, and ratified by the United States in 2008; which in turn delegates its rule-making to the World Anti-Doping Agency ("WADA").

While the Convention or even WADA may or may not be considered "private parties," they are distinctly not under the supervision, surveillance or authority of any United States governmental entity. In fact, the annex to the Convention that defines prohibited substances and methods can be changed over the objection of the United States, as Article 34 of the Convention provides that two-thirds of the signatory governments must object to a change in the prohibited list to prevent its adoption.

This unprecedented delegation of legislative power is repugnant to our constitution, as it allows a foreign entity to dictate the parameters of a criminal statute in this country.  This Court should find that the statute violates the non-delegation clause of Art. I, section 1, of the constitution.

**II.      21 U.S.C. § 2402 is void for vagueness.**

21 U.S.C. § 2402 is unconstitutionally vague on its face.[2]  The statute "fails to give ordinary people fair notice of the conduct it punishes" and is so "standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  As applied to Mr. Lira, it gave "no warning about what the law demands[.]" *United States v. Davis*, __ U.S. __, 139 S.Ct. 2319, 2323 (2019).  Accordingly, the Court should dismiss Count One because 21 U.S.C. § 2402 violates the Fifth Amendment.

A. Vagueness Doctrine

"[A] vague law is no law at all." *Davis*, 139 S.Ct. at 2323.  Before a person can be fairly tried and punished, "his case must be 'plainly and unmistakably' within the provisions of some statute." *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (internal citation omitted).

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V  Under the Due Process Clause, the government may not take away "someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595; *See also, Broadrick v. Oklahoma*, 413 U.S.601, 607 (1973); *Colten v. Kentucky*, 407 U.S. 104, 110-11 (1972); *Cameron v. Johnson*, 390 U.S. 611, 616 (1968); *United States v. Harriss*, 347 U.S. 612, 617 (1954); *Connally v. General Construction Co.*, 269 U.S. 385 (1926).

The constitution does not require exact specificity, but it does require that a law give reasonable notice so citizens can conduct themselves accordingly.  It's not enough that a statute is "imprecise"—a person may "conform his conduct to an imprecise but comprehensible

---

[2] The Court need not determine whether the statute is unconstitutionally vague as applied given the facial unconstitutionality of the statute.

normative standard." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).  But a statute is unconstitutionally vague if it has "no core"—no "ascertainable standard for inclusion and exclusion." *Smith v. Goguen*, 415 U.S. 566, 578 (1974).

The vagueness doctrine serves three purposes.  First, citizens are entitled to know what the law says in terms clear enough to follow and understand. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.").  Second, clear laws provide the "precision and guidance [] necessary so that those enforcing the law do not act in an arbitrary or discriminatory manner." *FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (vague statutes "permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections").  Third, "[t]he fair warning requirement also reflects the deference due to the legislature, which possesses the power to define crimes and their punishment." *United States v. Lanier*, 520 U.S. 259, 265 n.5 (1997).

B. § 2402 is unconstitutionally vague on its face.

The anti-doping statute is facially vague for two reasons.  First, it fails to provide proper notice as to what conduct is prohibited when it states "knowingly carry into effect, attempt to carry into effect, or conspire with any other person to carry into effect a scheme in commerce to influence . . . ."  Second, it is too difficult to determine what "prohibited substances" or "prohibited methods" would violate this statute, thus not providing fair notice.

1. *A facial challenge is appropriate.*

Historically, courts have analyzed the question of Fifth Amendment vagueness "as applied" to an individual defendant, rather than assessing the facial validity of the statute. *See, e.g., Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).  However, this approach is neither universal nor absolute.

Recent Supreme Court jurisprudence establishes that a statute can be facially invalid when it suffers from "hopeless indeterminacy." *Johnson*, 576 U.S. at 602 ("although statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp").  The *Johnson* majority pointed out it had deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness, even though the law might be acceptable as applied to someone charging "a thousand dollars for a pound of sugar." *Id.* at 602-03 (citing *United States, v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921)).  The Court also struck down a law prohibiting people on sidewalks from "conducting themselves in a manner annoying to persons passing by," even though reasonable people could agree it would apply to "spitting in someone's face." *Id.* at 603 (citing *Coates v. Cincinnati*, 402 U.S. 611 (1971)).

The Court in *Johnson* struck down the residual clause of the Armed Career Criminal Act, a provision covering a range of conduct well outside the scope of any constitutional protection. *Id.*  Not long after, the Court struck down the same vague language in 18 U.S.C. § 924(c), recognizing that to do otherwise the Court "would be effectively stepping outside our role as judges and writing a new law rather than applying the one Congress adopted." *Davis*, 139 S. Ct. at 2324.

2.   *§ 2402 fails to define what conduct is prohibited.*

The void-for-vagueness doctrine requires that a penal statute have sufficient definiteness that ordinary people can understand what conduct is prohibited. *Kolender*, 461 U.S. at 357.  This is so because "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).  And the legislature may not delegate the "legislative power to courts and juries to determine what acts should be held to be criminal and punishable." *L. Cohen Grocery Co.*, 255 U.S. at 86–87.

It is blackletter law that ordinary people cannot understand and must speculate if a statute's "mandates are so uncertain that they will reasonably admit of different constructions." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 393 (1926) (quoting *United States v. Capital Traction Co.*, 34 App. D.C. 592 (Ct. Apps. D.C. 1910)).  "Laws which prohibit the doing of things, and provide a punishment for their violation, should have no double meaning." *United States v. Reese*, 92 U.S. 214, 219 (1876).

It is not just that the statute is difficult to understand (which it is).  It simply fails to adequately describe the prohibited conduct.  The statute seems to punish something more than merely providing a "prohibited substance" to a participant in a major international sports competition.  What that other conduct is, is not at all clear.

Just as the residual clause was unconstitutionally vague, § 2402 requires judicial inquiry into what actions could possibly "influence" a sporting event, resulting in "more unpredictability and arbitrariness" than the constitution allows. *Davis*, 139 S.Ct. at 2326.

3. *It is too complicated to find the definitions of "prohibited substance" and "prohibited method" as to fail in providing fair notice.*

As discussed in more detail above, a person must take several complex steps before even beginning to try to learn what constitutes a "prohibited substance" or "prohibited method." The steps required to try to find the definitions for the terms are too burdensome to constitute fair notice.

While the athlete/participant in the major sporting event is fairly deemed to be on notice of the rules of the sporting event, a non-participant would not have the same notice. Ironically, § 2402 essentially criminalized cheating in a major sporting event, not for the athletes who are on notice of the rules, and honor-bound to follow them, but for other persons who are not participating in the events. Because § 2402 criminalizes conduct that would not have previously been thought not to be illegal, it should have clear, unambiguous terms that are easy to find.

## III.   21 U.S.C. § 2402 is overbroad.

Since its enactment, the First Amendment has permitted restrictions on a few historic categories of speech—including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct—that "have never been thought to raise any Constitutional problem." *United States v. Stevens*, 559 U.S. 460, 460 (2010) (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942)). According to First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs." *United States v. Williams*, 553 U.S. 285, 292 (2008). The threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. *Id.*

Often a vague statute is also unconstitutionally overbroad, because it purports to encompass constitutionally protected speech. Here, the terms of the statute could prohibit a

simple discussion with an athlete about using banned PEDs, because it could be deemed carrying into effect a scheme to influence a major international sporting competition through the use of a prohibited substance.

For example, if an athlete (in an international sporting competition) obtained a banned substance, and sought advice on the safest way to use that substance, the person giving that advice could seemingly be prosecuted under this statute. The statute could be applied to a doctor or other healthcare professional who sought to minimize the damage the athlete could suffer. The statute does not require that the person prosecuted actually provide the banned substance or conspire to provide a banned substance.

Since this is apparently the first prosecution under this statute, it is not clear how it will be applied. Indeed, at the probable cause hearing in this case, the case agent testified that he was unaware whether or not it was illegal to advise an athlete on the use of a banned substance. Transcript of Preliminary and Detention Hearings, Jan. 18, 2022 (ECF Doc No. 16 in Western District of Texas Case No. 22-MJ-00057-MAT,) at 39.

Yet, for purposes of venue, the government relies on a conversation thread that occurred between Mr. Lira and an athlete, some part of which occurred in the Southern District of New York. If that conversation is part of the criminal conduct in this case, then it seems that the government now asserts that discussing PEDs with an athlete falls under this statute. If that is the government's assertion, then the statute is overbroad.

**<u>Conclusion</u>**

The Court should find that § 2402 is unconstitutional because it is the result of an impermissible delegation of legislative authority. The Court should further find that the statute is

unconstitutionally vague and overbroad, as set out above.  For the foregoing reasons, Mr. Lira

respectfully requests that the Court dismiss Count One of the indictment.

DATED: September 6, 2022.

Respectfully submitted,

/s/ Mary Stillinger
STILLINGER & GODINEZ, PLLC
401 Boston Avenue
El Paso, Texas 79902
915-775-0705
*Attorney for Defendant Eric Lira*