UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :          22 Cr. 151 (LGS)
                        -against-                       :
                                                        :       **OPINION AND ORDER**
ERIC LIRA,                                              :
                                        Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Defendant Eric Lira was indicted on March 8, 2022, on one count of engaging in a major

international doping fraud conspiracy in violation of the Rodchenkov Anti-Doping Act of 2019

("RADA"), 21 U.S.C §§ 2401-2404, and one count of engaging in a drug adulteration and

misbranding conspiracy in violation of 21 U.S.C. §§ 331, 333(a)(1).  Defendant moved to

dismiss Count One of the Indictment on various constitutional grounds and to dismiss or transfer

the case for lack of proper venue.  For the reasons below, both motions are denied.

**I.     BACKGROUND**

The following facts are taken from the allegations in the Indictment filed on March 8,

2022.  Count One charges Defendant with conspiring with others to effect a scheme in which he

"agreed with others to provide, and did provide, multiple prohibited performance enhancing

drugs, including but not limited to human growth hormone and erythropoietin, to athletes

qualifying for and intending to compete in the 2020 Tokyo Olympics."  Count Two charges

Defendant with a conspiracy the object of which was to defraud by introducing misbranded

drugs into interstate commerce.  The Indictment alleges that Defendant engaged in the conduct

alleged in both counts "in the Southern District of New York and elsewhere."

The Indictment alleges the following overt acts in furtherance of the alleged conspiracies. On or about June 7, 2021, while in New York City, Defendant "engaged in conversations with" a Nigerian athlete about Defendant's plans to travel to sell misbranded performance enhancing drugs ("PEDs") to the athlete.  On or about June 14, 2021, Defendant provided human growth hormone ("hGH") and erythropoietin to a Swiss athlete.  On or about June 20, 2021, Defendant and the Swiss athlete discussed potential effects of using hGH.  On or about August 11 and 16, 2021, Defendant and an unnamed co-conspirator discussed the fact that the Swiss and Nigerian athletes, respectively, had tested positive for hGH.  Defendant and his co-conspirator discussed that the athletes could claim that that their positive tests were caused by the consumption of beef.

## II.   MOTION TO DISMISS OR TRANSFER FOR LACK OF PROPER VENUE

"Venue 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.  Venue may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location.  Venue is proper in any district in which an offense was begun, continued or completed.'"  *United States v. Hoskins*, 44 F.4th 140, 157 (2d Cir. 2022) (quoting *United States v. Lange*, 834 F.3d 58, 68-69 (2d Cir. 2016)).  When "a defendant is charged with multiple crimes in a single indictment, the government must satisfy venue with respect to each charge." *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 121 (2021).

"[W]here venue is challenged on a pre-trial motion to dismiss, the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue."  *United States v. Milton*, No. 21 Crim. 478, 2021 WL 5304328, at *3 (S.D.N.Y. Nov. 15, 2021), *appeal dismissed*, No. 21-2937, 2022 WL 1738158 (2d Cir. Mar. 17, 2022) (internal quotation marks omitted).  "At this initial stage, the government need only 'allege that criminal conduct occurred

within the venue, even if phrased broadly and without a specific address or other information,'
and the question of whether there is sufficient evidence to establish venue is left for trial." *Id.*
(quoting *United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010)).

Defendant's motion to dismiss for lack of venue is denied without prejudice to renewal at
the close of the Government's case because the Indictment alleges that the conduct constituting
the offenses occurred "within the Southern District of New York and elsewhere." *United States
v. Dupigny*, 18 Crim. 528, 2019 WL 2327697, at *4 (S.D.N.Y. May 30, 2019).  That language is
sufficient to establish venue on a motion to dismiss. *See, e.g.*, *United States v. Chocron*, No. 20
Crim. 400, 2021 WL 3005086, at *1 (S.D.N.Y. July 14, 2021) (citing *United States v. Chalmers*,
474 F. Supp. 2d 555, 574-75 (S.D.N.Y. 2007)); *United States v. Griffith*, No. 20 Crim. 15, 2020
WL 4369650, at *2 (S.D.N.Y. July 29, 2020).  "[W]ether there is sufficient evidence to support
venue in this District is appropriately left for trial." *Chalmers*, 474 F. Supp. 2d at 575.

In the alternative, Defendant requests a transfer of venue to the Western District of Texas.
Defendant's only argument in favor of a transfer is that venue is improper in this District.
Defendant's request for alternative relief is denied for the same reasons discussed above.

## III.    MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

Defendant moves to dismiss Count One of the Indictment on non-delegation, vagueness
and overbreadth grounds.  Defendant's motion is denied because none of the three constitutional
doctrines invoked applies to RADA.

### A.  Non-Delegation

Defendant argues that RADA violates the constitution's non-delegation doctrine, which
"limits Congress' authority to delegate its law-making function." *United States v. Mingo*, 964

F.3d 134, 137 (2d Cir. 2020).  Defendant's motion to dismiss on this ground is denied because

RADA contains no delegation by Congress of legislative or regulatory authority.

### 1.   The Non-Delegation Doctrine

In general, the non-delegation doctrine holds that Congress "may not transfer to another

branch 'powers which are strictly and exclusively legislative.'"  *Gundy v. United States*, 139 S.

Ct. 2116, 2123 (2019).  Courts recognize, however, that "Congress simply cannot do its job

absent an ability to delegate power under broad general directives," *id.*, and may "obtain the

assistance of its coordinate branches."  *Mingo*, 964 F.3d at 137 (cleaned up).  Congress may

delegate its power to other branches of the federal government so long as it also "lays down by

legislative act an intelligible principle to which the person or body authorized to exercise the

delegated authority is directed to conform."  *Gundy*, 139 S. Ct. at 2123 (cleaned up).  "This

'intelligible principle' test requires that 'Congress clearly delineates the policy, the public agency

which is to apply it, and the boundaries of this delegated authority.'"  *Mingo*, 964 F.3d at 137-38

(quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

While Congress has well-established authority to delegate such regulatory authority to

the Executive branch it cannot delegate regulatory authority to a private entity.  *See Dep't of

Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 46, 50-51, 55 (2015) (vacating holding that Congress

violated nondelegation principles by granting joint authority to Amtrak as a private entity to

issue metrics and standards based on the erroneous finding that Amtrak should be treated as a

private entity).  Defendant invokes this "private non-delegation doctrine," arguing that RADA is

unconstitutional because its scope can change based on the act of an entity outside of the U.S.

government.  Defendant lacks standing to raise this argument.  In any event, Defendant has

identified no precedent for holding that a statute like RADA acts as a delegation of regulatory

authority, and the Government has identified ample precedent for Congress exercising its legislative authority in the manner it did in RADA.

## 2.  The Text of RADA

RADA makes it illegal "for any person, other than an athlete, to knowingly carry into effect, attempt to carry into effect, or conspire with any other person to carry into effect a scheme in commerce to influence by use of a prohibited substance or prohibited method any major international sports competition."  21 U.S.C. § 2402(a).  Defendant's argument rests on RADA's definitions of "prohibited substance" and "prohibited method."  The statute gives each of those terms the "meaning given the term in Article 2" of the United Nations Educational, Scientific, and Cultural Organization International Convention Against Doping in Sport done at Paris October 19, 2005, and ratified by the United States in 2008 (the "Convention").  *See* 21 U.S.C. § 2401(4), (7), (8).  The definitions of "prohibited substance" and "prohibited method" in Article 2 of the Convention, in turn, refer to "any substance" or "any method" so described on the "Prohibited List," "which appears in Annex I to this Convention."  Convention, art. 2, ¶¶ 17-19, https://unesdoc.unesco.org/ark:/48223/pf0000142594.  The "Prohibited List" referenced in the Convention is promulgated periodically by the World Anti-Doping Agency ("WADA") -- subject to a veto by the parties to the Convention -- as part of the World Anti-Doping Code (the "Code").  *See* World Anti-Doping Agency, *World Anti-Doping Code 2021* at 31 n.24, https://www.wada-ama.org/sites/default/files/resources/files/2021_wada_code.pdf ("The Prohibited List is an integral part of the International Convention against Doping in Sport."); Convention, art. 34 (governing amendments to Annex I).

### 3.  Standing

Defendant lacks standing to assert a non-delegation challenge to RADA.  Even assuming RADA delegates regulatory authority, Defendant is not harmed by any exercise of that authority.

RADA is ambiguous about whether the list of "prohibited substances" and "prohibited methods" was fixed at the time the Convention was "ratified by the United States in 2008," or whether it incorporates the list as it continues to be updated.  If the fixed interpretation is correct, then RADA's scope cannot be changed except by an act of Congress, and there is no colorable basis for finding a delegation.  The effect would be the same as if Congress had copied and pasted the 2008 Prohibited List into the statutory text.

Defendant's argument rests on the updated-list interpretation, in which the list of prohibited substances and methods incorporated into RADA changes over time, based on amendments proposed by WADA and ratified by the state parties to the Convention.  But even assuming that were a delegation, and an impermissible one, no exercise of delegated authority would have caused Defendant any harm.  The Government asserts, and Defendant does not dispute, that the substances Defendant is accused of using in the alleged offenses have been on the prohibited list since the treaty was signed and ratified.  If the statute were given a limiting construction that fixed the Prohibited List at the time of ratification, and if any subsequent exercises of delegated authority were not incorporated in the statute, Defendant's alleged conduct would still be covered.  Defendant thus lacks standing to assert a non-delegation challenge.  *Cf. United States v. Guzman*, 591 F.3d 83, 92 (2d Cir. 2010) (holding that defendants already convicted and registered as sex offenders prior to the enactment of SORNA lacked standing to challenge the statute's delegation of authority to the Attorney General, where that authority did not extend to those defendants' registration requirements).

### 4.  Absence of Delegation

Even assuming that Defendant's updated-list interpretation of the statute is correct, and that Defendant has standing to assert a non-delegation argument, RADA does not delegate any legislative authority from Congress to WADA or anyone else.  Congress made it a federal crime knowingly to facilitate violations of the rules governing certain international sporting events. RADA applies only to events that are "governed by the anti-doping rules and principles of the Code," including the Prohibited List.  § 2401(5)(A)(ii).  Thus, RADA presupposes the existence of an independent regulatory regime governing international sports and does not authorize anyone to create one on Congress's behalf.  When WADA makes or changes rules governing its events, the power it exercises does not come from Congress.

RADA is analogous to the Chemical Weapons Convention Implementation Act of 1998. That statute makes it unlawful to "retain, own, [or] possess" toxic chemicals or their precursors for certain purposes, and incorporates lists of chemicals and precursors in the Chemical Weapons Convention ("CWC").  18 U.S.C. §§ 229(a), 229F.  Defendant notes that unlike RADA, § 229F contains its own definitions of toxic chemicals and precursors -- essentially, chemicals that can "harm" humans or animals and components thereof -- and incorporates the CWC's annexes only as lists of examples.  That distinction is unconvincing.  RADA similarly limits the substances and methods that give rise to criminal liability to those who can "influence" a sports competition. In either instance, someone's use of a particular substance might be lawful or arguably lawful one day and plainly unlawful the next based on an amendment to a treaty's annex.

While neither the Government nor the Court has located a case upholding the Chemical Weapons Implementation Act against a non-delegation challenge, the Act has been subject to constitutional challenges on other grounds.  *See generally, e.g.*, *Bond v. United States*, 572 U.S.

7

844 (2014).  In any event, Defendant is incorrect that the structure of RADA is "unprecedented."
Nor has Defendant persuasively argued that Congress's practice of attaching federal criminal
penalties to violations of other bodies of law, in RADA and elsewhere, is unconstitutional.

The cases cited by Defendant are distinguishable.  *State v. Rettig*, 987 F.3d 518 (5th Cir.
2021), *cert. denied sub nom. Texas v. Comm'r of Internal Revenue*, 142 S. Ct. 1308 (2022), dealt
with a purported *sub*-delegation of authority from an administrative agency to a private party.
The question in *Rettig* was not whether Congress exceeded its constitutional authority in
delegating power to the agency, but whether the agency exceeded its statutory authority in
further delegating that power to a private party instead of promulgating regulations itself.  In
*Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), the statute provided that all producers and
miners in a given market were bound to wage-and-hour rules agreed to among the majority of
producers and miners in that market.  *Id.* at 283-84.  The Supreme Court held unconstitutional
this "power conferred upon the majority . . . to regulate the affairs of an unwilling minority"
because "one person may not be [e]ntrusted with the power to regulate the business of another,
and especially of a competitor."  *Id.* at 311.  That statute granted new power to private parties to
create rules to govern all the participants in a market.  *Id.*; *see also Ass'n of Am. R.R.*, 721 F.3d at
669 (addressing an express delegation of authority to Amtrak to develop regulatory requirements
for railroads).  WADA, on the other hand, requires no delegation of authority from Congress to
create rules governing sports competitions, and RADA does not purport to grant any.  RADA
simply created freestanding criminal liability for facilitating violations of those rules.

### B.  Vagueness

Defendant asserts a facial challenge to RADA, arguing that it is unconstitutionally vague. Defendant's vagueness argument fails because he presses the wrong standard of review and because, under any standard, the statute is not vague.

### 1.  Legal Standard

A "statute is unconstitutionally vague if it fails to define the unlawful conduct with sufficient definiteness that ordinary people can understand what conduct is prohibited, or if its vagueness makes the law unacceptably vulnerable to arbitrary enforcement." *United States v. Requena*, 980 F.3d 30, 39 (2d Cir. 2020), *cert. denied sub nom. Raymond v. United States*, 141 S. Ct. 2761 (2021) (internal quotation marks omitted).  To address a vagueness challenge, a court must "(1) 'determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and (2) 'then consider whether the law provides explicit standards for those who apply it.'" *United States v. Holloway*, No. 20-578, 2022 WL 453370, at *2 (2d Cir. Feb. 15, 2022) (summary order), *cert. denied,* No. 22-5196, 2022 WL 4656627 (U.S. Oct. 3, 2022) (quoting *Rubin v. Garvin*, 544 F.3d 461, 468 (2d Cir. 2008)).

As a threshold matter, Defendant mounts only a facial challenge to the statute and disclaims any as-applied challenge.  That presumably is because Defendant's charged conduct -- conspiring to provide prohibited performance enhancing drugs to Olympic athletes -- is easily understood to violate the statute, which makes it unlawful for "any person, other than an athlete, to . . . conspire with any other person to carry into effect a scheme in commerce to influence by use of a prohibited substance or prohibited method any major international sports competition." 21 U.S.C. § 2402(a).  "Vagueness challenges typically concern a statute 'as applied' to the challenger, who professes that the law in question 'cannot constitutionally be applied to the

challenger's individual circumstances.'" *Requena*, 980 F.3d at 39.  When a Defendant instead "challenge[s] a statute as vague *on its face*," he has a "significant burden."  *Id.*  To prevail, Defendant must establish that the statute "is so fatally indefinite that it cannot constitutionally be applied to anyone," that is, "that no set of circumstances exists under which the Act would be valid."  *Requena*, 980 F.3d at 39 (internal quotation marks omitted).

There are limited exceptions to the above rule, "in which a statute that is not necessarily vague in all applications may nonetheless be void for vagueness on its face."  *Id.*  "[T]he most established of these" applies to statues that implicate First Amendment or other fundamental rights.  *Id.* (collecting overbreadth cases).  Defendant's overbreadth argument is addressed in the next section, and the other recognized exceptions do not apply here.  Contrary to Defendant's argument, *Johnson v. United States*, 576 U.S. 591 (2015), did not announce a new test for all facial vagueness challenges.  The Second Circuit has held that *Johnson* has a "narrow ambit" encompassing only statutes that "require the categorical approach."  *Requena*, 980 F.3d at 42. That is, *Johnson* and the cases following it recognized a special vagueness problem with statutes that require courts to estimate the degree of risk posed by the imagined "idealized ordinary case" of a criminal offense, abstracted from the defendant's conduct.  *Johnson*, 576 U.S. at 604 (asking courts to determine whether a type of crime in the abstract is a crime of violence, regardless of whether the defendant employed any violence).  RADA is not such a statute.  Like the statute in *Requena*, RADA requires application of a qualitative standard ("influence") to a defendant's real-world conduct, not to a "judge-imagined abstraction."  *Id.*

Outside of limited exceptions, "[n]either the Supreme Court nor [the Second Circuit] has definitively resolved whether facial vagueness challenges not based on the First Amendment may proceed against statutes that can constitutionally be applied to the challenger's *own*

conduct." *Requena*, 980 F.3d at 40; *accord Holloway*, 2022 WL 453370, at \*2.  Courts in this circuit typically handle such challenges on only an as-applied basis and "often decline[] to entertain facial challenges" on other grounds.  *Requena*, 980 F.3d at 40; *accord United States v. Ragonese*, 47 F.4th 106, 113 (2d Cir. 2022).  "Despite this baseline aversion to facial challenges," courts "are permitted to consider them in appropriate cases," particularly "to facilitate a challenge's definitive rejection."  *Requena*, 980 F.3d at 40 (citations omitted).  But when addressing "the merits of a facial challenge outside the First Amendment context, [the Second Circuit has] recognized the Supreme Court's instruction to at least 'examine the complainant's conduct before analyzing other hypothetical applications of the law."  *Id.*

### 2.  Application

Even assuming that Defendant's facial challenge to RADA can be considered, it is meritless.  Defendant first argues that the following italicized phrase fails to provide proper notice of what conduct is prohibited:  "It shall be unlawful for any person, other than an athlete, to *knowingly carry into effect, attempt to carry into effect, or conspire with any other person to carry into effect a scheme in commerce to influence* by use of a prohibited substance or prohibited method any major international sports competition."  21 U.S.C. § 2402(a).  It is unclear where the alleged vagueness lies.  Based on the plain meaning of the italicized language, a "person of ordinary intelligence" would have "a reasonable opportunity to know" what is prohibited.  To "carry into effect" is a well-known idiom meaning to "put into effect."  *See, e.g.*, *Carter*, 298 U.S. at 291 (noting that the federal government has "such implied powers as are necessary and proper to carry into effect the enumerated powers").  Attempt, conspiracy, scheme and commerce are all common concepts in the criminal law, as is a mens rea element requiring that Defendant act "knowingly."  The usual dictionary meaning of "influence" is, for example,

"to affect or alter by indirect or intangible means." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/influence.  Applying these concepts, the statute prohibits putting a scheme into effect to affect or alter a major international sports competition by the use of a prohibited substance or method.  The statute also prohibits attempting or conspiring to do so.

Defendant argues that RADA "requires judicial inquiry into what actions could possibly 'influence'" -- or affect or alter -- "a sporting event," resulting in arbitrary results.  This ignores crucial statutory language.  RADA does not prohibit the whole range of imaginable conduct that might affect or alter a competition; RADA prohibits only efforts to "influence" that involve a specifically defined list of "prohibited substances" and "prohibited methods."  *See* 21 U.S.C. § 2402.  At least some "set of circumstances exists under which the Act would be valid," such as conspiracies like the one charged here to provide performance enhancing drugs to Olympic athletes.  *Requena*, 980 F.3d at 39 (internal quotation marks omitted).  People of ordinary intelligence can understand that such a scheme has as its object influencing (or affecting) a major sporting event, and there is no risk of "arbitrary enforcement" of the law in such cases.  *Id.* Defendant suggests that "one can imagine" difficult edge cases, but even if that were enough to invalidate a statute on its face, Defendant does not offer any such scenarios.  "[A] statute or regulation is not required to specify every prohibited act," *Williams v. Korines*, 966 F.3d 133, 140 (2d Cir. 2020) (internal quotation marks omitted), and "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree," *Johnson*, 576 U.S. at 604 (same).

Defendant's second vagueness argument, that the statute is vague because it takes several steps to find the lists of "prohibited substances" and "prohibited methods," is also unavailing.  It

is hardly more difficult to look up the text of the treaty and public documents incorporated by reference than it is for "ordinary people" to look up the statutes and cases construing them.  As the Government notes, the U.S. Code is itself full of cross-references.  Contrary to Defendant's argument that "RADA references definitions that are nowhere to be found in the U.S. code or any other body of law in the United States," ratified treaties are the law of the United States, on the same footing as statutes.  *See* U.S. Const., art. VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land . . . ."); *Peterson v. Islamic Republic of Iran*, 758 F.3d 185, 190 (2d Cir. 2014) ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation . . . ." (quoting *Whitney v. Robinson*, 124 U.S. 190, 194 (1888))).

Defendant argues that RADA is ambiguous about whether it refers to the prohibited substances as of the time the treaty was ratified or in its current version.  Even assuming that ambiguity exists, the statute is not unconstitutionally vague because at least some cases exist -- like the instant case -- that involve only substances that have been prohibited since the treaty was ratified.  RADA therefore is not unconstitutionally vague either on its face or as-applied.

### C.  Overbreadth

Defendant argues in his opening memorandum of law that RADA is unconstitutionally overbroad because it criminalizes "a substantial amount of protected speech."  This argument is also unpersuasive.  "Speech integral to criminal conduct" has never been protected by the First Amendment.  *United States v. Stevens*, 559 U.S. 460 (2010).  RADA reaches speech only that is integral to criminal conduct because RADA requires a nexus to both (1) a prohibited or banned substance or method, and (2) a scheme or conspiracy to use that substance or method to

13

influence a major international sports competition. *See United States v. Williams*, 553 U.S. 285, 292 (2008) (holding that a law criminalizing requests for or offers to provide contraband was not unconstitutionally overbroad). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *See Virginia v. Hicks*, 539 U.S. 113, 124 (2003). Defendant does not cite any case in which a statute was invalidated on similar facts and does not even mention the argument in his reply. *See Williams v. N.Y. State Unified Ct. Sys. Off. of Ct. Admin.*, No. 16 Civ. 2061, 2017 WL 4402562, at *6 n.6 ("Defendants failed to address the issue in their reply and thus may have abandoned this argument.").

The only case cited by Defendant invalidating a statute on overbreadth grounds, *United States v. Stevens*, 559 U.S. 460 (2010), is distinguishable. In *Stevens*, the Supreme Court held that a statute prohibiting certain "depiction[s] of animal cruelty" was overbroad. *Id.* at 464. The statute did not incidentally criminalize some speech because it was integral to criminal conduct; the law targeted speech itself. While much of the speech in question probably caused or resulted from grave harm to animals, the Court noted the statute was not limited to depictions of "cruelty," only conduct that was illegal under state law. *Id.* at 474. The Court identified several forms of expression that would violate the statute but might not implicate any of the reasons for criminalizing "cruelty," such as a depiction of recreational hunting activity that violates some technical provision of state law. *Id.* at 474-77. The Court rejected the analogy to categories of "speech" that are completely unprotected because of their intrinsic relationship to underlying criminal conduct. *Id.* at 471.

Defendant's suggestion that a doctor might be liable for advising an athlete on the safest way to use a prohibited substance simply begs the question. If the doctor in question had that

conversation as part of a scheme to influence a major international sports competition, he may be liable; if not, he would not be.  A statute criminalizing conduct, including speech and protected associational activities that are integral to that conduct, is not overbroad simply because some people might engage in that conduct for laudable reasons.  *See United States v. Thompson*, 896 F.3d 155, 165 (2d Cir. 2018) (holding that statute prohibiting child sex trafficking was not unconstitutionally overbroad simply because it "might be cited as prohibiting an organization from providing certain types of direct support services to minor prostitutes").  Nor has Defendant identified "a substantial number of instances . . . in which the law cannot be applied constitutionally." *Id.* at 168 (cleaned up).  For example, there is no reason to think that people like Defendant's hypothesized doctor "would have the *mens rea* to support conviction." *Id.* at 168 (cleaned up) (finding no substantial risk that family members attempting innocently to support minor victims of sex trafficking would do so "'knowing, or in reckless disregard of the fact, that' the minor will, at a later time, 'be caused to engage in a commercial sex act'").  RADA is a permissible regulation of criminal conduct that exclusively (or almost exclusively) burdens speech that is integral to that conduct.  RADA therefore is not unconstitutionally overbroad.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions are DENIED.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 25 and 27.

Dated: December 5, 2022
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE